## MENDEZ v THE TWENTY-FOUR COLLECTION, INC.

Case No. 88-36221

Eleventh Judicial Circuit, Dade County

July 21, 1989

### APPEARANCES OF COUNSEL

**Daniel Mones,** for plaintiff.

**Robert F. Frankel,** for defendant.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

#### FINAL JUDGMENT

THIS CAUSE duly came before the Court for final hearing on Plaintiff's Complaint for Declaratory Judgment and upon Defendant's Answer, Affirmative Defenses and Counterclaim. This is not an unusual or complex case and substantial of the facts are not in dispute.

#### Background

Succinctly stated, Plaintiff Virginia Mendez was employed on or about August 28, 1986, by Defendant The Twenty-Four Collection as a "sales associate" (i.e. salesperson) to sell fine clothing at Defendant's

place of business in the Shoppes of Bal Harbour (an elite shopping mall). The Employee Salary Agreement (Plaintiff's Exhibit 1) indicates $250 wage with certain incentives and an "average 40 hour work week," with a $15,000 guarantee, reduced by absence or time off.

Plaintiff also signed an Employment and Non-Competition Agreement (Plaintiff's Exhibit 2) which contains among other things, the following:

"In the event of the termination, voluntarily or involuntarily, of the undersigned's employment with the EMPLOYER, for any reason, then for a period of two (2) years from the date of said termination, the undersigned employee will not engage, in any capacity, directly or indirectly, in any business within ten (10) miles of Bal Harbour similar to the kind or nature of business conducted by the EMPLOYER during the employment."

On or about August 30, 1987, a different Employee Salary Agreement (Plaintiff's Exhibit 3) was entered into by the parties. Plaintiff was to be paid $7.00 per hour plus incentives with "average 40 hours work week." There was no compensation guarantee as previously. It appears that the employment arrangements were at will and not for definite periods.

## Plaintiff's Contentions

Plaintiff's position is that she was to be employed for 40 hours each week; that renovations took place in Defendant's place of business in the summer of 1988; that Plaintiff was requested to reduce her hours since there was not sufficient business to warrant her employment on a 40 hour basis; that pursuant to Defendant's request she did work substantially less than 40 hours a week; and that Plaintiff was self-supporting and could not financially manage on reduced hours. Plaintiff further contends that since she was not employed on at least 40 hours per week, Defendant breached the employment arrangements, and Plaintiff was therefore free to leave without restriction.

## Defendant's Contentions

Defendant's position is that Plaintiff was employed and uniquely trained as a salesperson in Defendant's Bal Harbour store, that no guarantee of hours or weekly pay was agreed to; that the work interruption was only for a short period; that Plaintiff never told Defendant she wanted to work a full 40 hours or that she would leave if not so employed; and that Plaintiff left solely to work with Defendant's competitor who was starting a business in the same shopping mall.

## The Evidence

In response to the Court's inquiry, Defendant urges that Plaintiff's unique training consisted of the removal of excessive makeup from Plaintiff's face in that her mascara was not acceptable to Defendant; one-half day of reading the training manual; and 10 days of observing other sales personnel.

The Court was particularly impressed with the testimony of witness Goldstein who appeared to be a concerned and caring employer who devoted extraordinary time and talent in his "hands on" attitude in directing the business operations of the Defendant. Indeed, prior to the second Employee Salary Agreement, he recommended to Plaintiff for her financial benefit that she not change her employment arrangements to an hourly basis. All documents were drawn by the Defendant. The only area of testimonial conflict between the parties is whether Plaintiff left for another position or whether she left for Defendant's alleged failure to provide the 40 hours of work.

Plaintiff said she discussed the necessity for the 40 hours with supervisor Ms. Ulman. Ms. Ulman was not a witness at the trial. Other witnesses in behalf of Defendant said they knew nothing of Plaintiff's alleged complaints of a lack of 40 hours, and that the 40 hour week was averaged over the year not on a weekly basis. It is clear that an important consideration in Plaintiff desiring to leave Defendant's employ was to join the new allegedly similar venture and that she subsequently utilized the lack of a 40 hour week to justify her actions.

## The Law

Florida Statute 542.33(2)(a), provides in pertinent part:

" . . . one who is employed as an agent, independent contractor, or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, . . . so long as such employer, continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction."

"The statute is designated to allow employers to prevent their employees and agents from learning trade secrets, befriending their customers and then moving into competition with them." *Miller Mechanical, Inc. v Ruth,* 300 So.2d 11, 12 (1974). However, an employee's lack of knowledge of significant trade secrets is no basis on which to deny an employer relief in an action for injunction for enforcement of a noncompete agreement. *Suave Shoe Corporation v Fernandez,* 390 So.2d 799 (Fla. 3DCA 1980).

186

## Discussion

The only issue is whether the Plaintiff has presented an appropriate defense to enforcement of the non-compete agreement by alleging that defendant breached the employment arrangements if defendant failed to provide a 40 hour work week. Florida has adopted the general rule that an employer who has breached his agreement may not enforce the noncompetitive agreement against the employee. See the similar case of *Troup v Heacock,* 367 So.2d 691 (Fla. 1st DCA 1979). It would be against established law to allow an employer who has breached a provision of an employment contract to secure an injunction enforcing another provision favorable to it. Hence, in *Troup v Heacock, supra* that court said the following:

"The contract was drawn by J. M. Heacock and, therefore, the ambiguities contained therein are to be construed against him and in favor of Robert Troup. This contract is not enforceable against Robert Troup. We find that Jerry Heacock breached the same by reducing the $125 weekly draw provided for in the agreement to the sum of $100 per week, and then later to $50 per week, all without the consent of Robert Troup. Thereafter, for whatever reason that was pleasing to Jerry Heacock, he fired Robert Troup. Having unilaterally reduced the amount stipulated for Troup's weekly draw, such action had the legal effect of releasing Troup from any obligation to Heacock. Fla. Jur. "Contracts," Sections 164, 175." (at p. 692)

This Court recognizes the validity of contracts between employers and employees restraining competition after employment ends, in accordance with the policy expressed in the statute before us. However, in light of the facts presented in the instant case, which may also be considered as *de minimus,* the law and the equities are with Plaintiff and we find that the plaintiff has sustained her burden of proof by appropriate evidence as to why the restrictive agreement should not be enforced against her.

In a somewhat similar case, *Sarasota Beverage Co. v Donald Johnson, et al.,* 14 FLW 416 (Feb. 17, 1989) the Second District Court analyzed and held the subject statute not to be effective on an application for an injunction. There, the employee resigned his employment and accepted similar employment with a competing beer distributor. The employee's affirmative defenses to enforcement of the restrictive covenant included alleged breach of contract and failure of consideration. The language of that Court is appropriate here:

"Moreover, in bringing an injunctive action to enforce such an agreement, one of the essential elements for issuance of the injunc-

tion, irreparable injury, is presumed upon proof of breach of the agreement. *Capraro v Lanier Business Products, Inc.,* 466 So.2. 212 (Fla. 1985). However, merely because the law presumes the existence of a necessary element of a cause of action, it does not prohibit the rebuttal of such a presumption by evidence adduced at a full hearing on the issue. That is what has occurred in this case in the hearing on the preliminary injunction before the trial judge. As a result of that hearing, the trial judge concluded that any threatened harm to appellant [the employer] was outweighed by the possible harm to Johnson [the employee]." (at p.417)

\* \* \*

" . . . [T]he trial judge's 'reasoning' is apparent. Johnson's only possible violation of the agreement was the fact that his prescribed route for Blaikie required him to make a single foray across the Sarasota County line from his principal Charlotte County route to service a neutral noncompetitive customer of both appellant and Blaikie. Obviously, the trial judge concluded that to enforce the agreement in such a small area would be severely detrimental to Johnson and hardly a bother to appellant. In other words, to enforce the agreement in that area of Sarasota County under the circumstances of this case would be unreasonable." (at p.417)

\* \* \*

"While the case of *Twenty Four Collection, Inc. v Keller,* 389 So.2d 1062 (Fla. 3d DCA 2980) *rev. denied,* 419 So.2d 1048 (Fla. 1982), contains some language that might appear to limit or modify previous rulings that "unjust result" and "overly burdensome effect upon the employee" are important and cognizable facts in determining reasonableness and thus enforceability of noncompete agreements, we do not believe that *Twenty Four Collection* is a complete and proper statement of the applicable law.

Our concern as to the viability of *Twenty Four* is enhanced by the fact that the same court, in deciding *Prooslin,* which enunciates so many of the applicable principles of law, does not mention its earlier decision in *Twenty Four.* It is important in understanding *Prooslin* to discern that while *Prooslin* acknowledges that irreparable injury may be presumed, that presumption does not prevent the weighing of relative hardships and harm that may result from the granting or denying of a temporary injunction." (at p.418)

The foregoing analysis follows from the landmark case of *Capelouto v Orkin Exterminating Co. of Florida,* 183 So.2d 532 (Fla. 1966):

"We agree with appellant that the fact that such contracts may be

188

lawfully made and enforced under the statute does not ipso facto make every such contract enforceable (sic) as written. The restrictive provisions of such contracts will generally be enforced in such way as to protect the legitimate interest of the employer without doing harm to the public interest, and without inflicting an unduly harsh or oppressive result on the employee."

To the same effect is *Coris Corp. v Prooslin,* 482 So.2d 486 (Fla. 3d DCA 1986) which is an excellent review of this subject.

In the case at bar, and without disparaging the work involved, the evidence was overwhelming that there was nothing unique (as recognized in the law) in the nature of Plaintiff's work; no special training was required; no secrets were imparted which would impair or detract in any manner from defendant's business; no long term contract was involved; no special consideration was paid for the restrictive covenant; and no genuine harm (except perhaps hurt feelings) could result to defendant from non-enforceability of the restrictive covenant.

On the other hand, the prejudice to plaintiff by enforceability of the restrictive covenant was immense—her ability to survive was at issue since her financial livelihood was in jeopardy.

In view of this decision, it is unnecessary to address the issues of competitiveness, or reasonableness of the time or area restrictions.

### Judgment

Based on the foregoing, we therefore declare and hold that the subject noncompetitive agreement insofar as Virginia Mendez is concerned, is not enforceable as applied to the facts of the instant case.

Accordingly, judgment is hereby entered in behalf of Plaintiff Virginia Mendez as against Defendant The Twenty-Four Collection, Inc. The Court reserves jurisdiction for taxable costs and for purposes of enforcing this Final Judgment.

DONE AND ORDERED in Chambers, Miami, Dade County, Florida, this 21st day of July, 1989.