**In the Matter of Walter W. THOMAS, Debtor.**

**Walter W. THOMAS, Plaintiff,**

v.

**FEDERAL INSURANCE AGENCY, Defendant.**

**Bankruptcy No. 82–1516. Adv. No. 82–874.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 4, 1985.

Albert I. Gordon, Tampa, Fla., for plaintiff.

Lisa Pratt, Henderson, Franklin, Starns & Holt, Ft. Myers, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case commenced upon the Voluntary Petition of Walter W. Thomas. The particular matter under consideration involves an adversary proceeding brought by the Debtor. The Debtor seeks by his complaint a declaratory judgment to determine the amount owed, if any, by the Debtor to Federal Insurance Agency, Inc. (Federal) and also to determine the enforceability of a non-competition clause found in an agreement between the Debtor and Federal.

Federal, after responding to the Debtor's complaint, asserted a counterclaim against the Debtor which sought money damages and an injunction. As grounds for its counterclaim, Federal contends that the Debtor breached the above-referenced agreement between the parties, that the Debtor received excess advances against commissions earned under the agreement and that the Debtor is engaging in activity contrary to the non-competition agreement referenced above.

At the pretrial conference, it was resolved that the issues would be bifurcated and that the initial questions tried would be Federal's right to an injunction and to an accounting.

The facts relevant to a resolution of this controversy as they appear from the record may be summarized as follows:

In the summer of 1980, the Debtor contacted the son of the President of Federal and inquired about the possibility of establishing either an employment or an independent contractor relationship with Federal. As a result, the Debtor and Federal entered into an oral agreement whereby the Debtor agreed to undertake to sell casualty, health, life and hospitalization insurance policies on behalf of Federal. However, the Agreement required the Debtor to devote his primary efforts to the sale of casualty insurance policies. For his efforts, the Debtor was to receive a commission on his sales plus $200 per month for expenses. It appears from the record that Federal agreed to pay the Debtor $2,000 per month as a draw against his earned commissions. The draw arrangement was projected for a one year period and it was understood by the parties that in the first year of the association, the commissions earned by the Debtor would not be sufficient to meet the draw he would receive. It was contemplated by the parties that in subsequent years, as the Debtor's sales rose, a break even point between draw and commissions would be reached at which time the Debtor would receive only his commissions with no draw.

█ Although it was frequently said by the President of Federal that the arrangement was an employment contract, it is clear that the Debtor was an independent contractor. This is so regardless of the fact that the Debtor, at his own request, was treated as an employee and his draw was subject to both FICA and withholding for a short period of time.

The arrangement was later memorialized in writing, but was back-dated a year and a half to August 1, 1980. The written agreement reflected those terms outlined above and in addition stated that the Debtor would devote his full time and efforts to writing policies for Federal.

In addition, the written contract stated that the arrangement could be terminated by either party by the giving of 60 days notice, or that Federal, without the giving of 60 days notice, could terminate the ar-rangement if the termination was for cause. Under the Agreement, cause was defined as:

"Continued and substantial neglect of business after written warning of specific defects of "Debtor," misconduct by "Debtor" involving moral turpitude, or conviction of a felony."

In addition to the provision on termination, the contract also set forth a non-competition clause whereby the Debtor agreed not to enter into any competing insurance business and not to write any policies for any persons who were clients of Federal on the date the Agreement was terminated. The terms of the Agreement provided that the Debtor should not compete for a period equal to "the same time period as equaled by Employers (Federal) payout to Employee (Debtor) herein set forth" or that in the event no "payout" was owing, as turned out to be the case, then Federal would pay the Debtor $100 per year for five years in consideration of the Debtor's non-competition. It is this clause which the Debtor seeks to have declared unenforceable and which Federal seeks to enforce via injunction.

The Debtor contends that Federal wrongfully terminated the Agreement by discontinuing the draw without 60 days notice and without cause, and that he is, therefore, not bound by the terms of the non-competition clause. Federal, on the other hand, contends that the Debtor neglected his duties; that the parties subsequently agreed to eliminate the draw aspect of the contract; and that the Debtor terminated the Agreement by discontinuing his work for Federal. Alternatively, Federal states that if it is found that Federal terminated the Agreement, then it did so for cause.

As cause, Federal claims that the Debtor engaged in various activities which interfered with his work. It is clear that the Debtor was somewhat of a gun collector and did from time to time buy and sell various types of guns. Some of the guns the Debtor sold were sold to customers of Federal and some were sold to other parties. It is clear, however, that during the

entire time that the Debtor was associated with Federal, he sold not more than eight or nine guns. In addition to gun collecting, the Debtor also bought and sold automobiles. It is without dispute, however, that the Debtor was not engaged in the commercial automobile trade and that during the parties' association, he traded only three automobiles, all for his own use.

It is the above outlined activity concerning gun and automobile trading which Federal claims constituted cause as defined by the written contract, and which Federal claims entitled it to terminate the agreement without giving 60 days notice. The Debtor claims that his activities did not amount to "cause" as defined by the contract and that, therefore, Federal breached the Agreement when it terminated the draw portion of the Agreement without giving 60 days notice.

■ Considering the evidence in toto, it is clear that Federal did not give 60 days notice prior to its termination of the draw aspect of the Agreement. It is equally clear that regardless of whether or not the activities of the Debtor constituted cause, a proposition in and of itself that this Court finds to be without sufficient factual basis, Federal did not provide "written warning of specific defects" of the Debtor as would be required in any event before the Agreement could be terminated for cause. Based on these facts, it is clear that Federal committed the first material breach of the contract.

■ Having committed the first breach, the general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contract liability. *See generally, Troup v. Heacock,* 367 So.2d 691 (Fla. 1st DCA 1979) and 11 Fla.Jur.2d *Contracts* § 169 (1981). It is clear that the non-competition agreement and the Debtor's obligations thereunder were dependent upon the fulfillment by Federal of its obligations. *See, Troup v. Heacock, supra.*

■ In addition, not only did Federal wrongfully terminate the Agreement, but

further testimony established that Federal failed to pay the $100 per year necessary to maintain the non-competition clause in effect.

Based upon the foregoing, it is clear that the Debtor was never bound by the non-competition clause and that no injunction would be proper.

This leaves for consideration the contention by Federal that the Debtor received excess draw payments over the commissions he earned. It is without dispute that the Debtor never earned sufficient commissions during the entire period of the association on a cummulative basis to cover his draw. It does appear, however, that during the months of April, May and June of 1982 that the Debtor did earn sufficient commissions to cover his monthly draw. On March 25, 1984, the Debtor was informed by the President of Federal that because of his low commissions, his draw would be immediately discontinued and would not be resumed until he was able to wipe out the deficiency then existing. This was, in effect, a termination of the Agreement by Federal.

It is the contention of the President that the draw arrangement was terminated by mutual consent. This contention is denied by the Debtor and this Court believes no consent by the Debtor was ever obtained. Be that as it may, the Debtor stayed on for three more months, but because he could not generate sufficient commissions to support himself he stopped his activities with regard to Federal. It is clear that the Debtor's continued efforts to sell policies was not a waiver of his right to treat the contract as breached, but rather an attempt to make the best of a bad situation.

■ According to the bookkeeper for Federal, the Debtor's total commissions earned when compared to his monthly draws left a balance owing by the Debtor to Federal of $13,873.07. This amount includes credit given to the Debtor for policies he sold for the son of the President who was in charge of the life, health and hospitalization insurance division of Feder-

al. The conclusion that the contract was breached by Federal and that the non-competition clause is not effective does not absolve the Debtor of his responsibility for the excess draw payments. The Debtor, therefore, is indebted to Federal for the excess money he received. Therefore, although the non-competition clause is unenforceable, the Debtor is indebted to Federal for $13,873.07, who is entitled to have a claim allowed in that amount.

A separate final judgment will be entered in accordance with the foregoing.