647 So.2d 888 (1994)
Theodore M. KUPSCZNK, Appellant,
v.
BLASTERS, INC., Appellee.
No. 94-00444.
District Court of Appeal of Florida, Second District.
November 9, 1994.
Rehearing Denied January 4, 1995.
*889 Johnnie B. Byrd, Jr., Plant City, for appellant.
Dennis P. Waggoner and Martin L. Garcia of Hill, Ward & Henderson, P.A., Tampa, for appellee.
FRANK, Chief Judge.
Theodore Kupscznk has appealed from the trial court's denial of his motion to dissolve a temporary injunction which prohibited him from competing with his former employer, Blasters, Inc. We affirm the entry of the temporary injunction but remand for the trial court to consider the reasonableness of the time and area restrictions of the noncompetition agreement it has enforced.
Kupscznk attempted to defend against entry of the injunction on the ground that the noncompetition agreement was unenforceable because of Blasters' prior breach of their employment contract. The events giving rise to this dispute demonstrate that Kupscznk's view is wholly untenable.
Blasters, a Tampa based waterblasting contractor, hired Kupscznk as its vice president in September of 1981. Kupscznk negotiated his compensation package with Blasters' president, Frederick Boos, and the parties agreed to a base salary of $23,000.00 and a five percent commission on gross sales. The employment agreement was never reduced to writing, nor was there any understanding as to the duration of Kupscznk's employment. On his fifth or sixth day of work, Boos asked Kupscznk to sign the noncompetition agreement now before us, which he did. The agreement makes no reference to an employment contract other than to state that the employment of Kupscznk by Blasters is consideration for the agreement, that Blasters is to define Kupscznk's duties and responsibilities as vice president, that Blasters has the absolute right to terminate Kupscznk at any time, and that at termination of his employment for any reason Kupscznk agrees not to compete with Blasters in the waterblasting business, to solicit or engage in work for former clients, or to use Blasters' trade secrets, each restriction to endure for a period of three years.
Kupscznk testified that in 1982 the commission structure was changed. He was put on a sliding scale which would award him a five percent commission based on gross sales, but the percentage would increase to six percent for gross sales from $200,000 to $300,000, and to seven percent for sales over $300,000. Kupscznk accepted this change and continued his employment. A few years later the maximum commission was reduced to six percent; in 1988 the maximum returned to five percent. Kupscznk continued to work during all of the restructuring of commissions. Never was there any indication that he was promised a certain salary or commission for any length of time. On occasion, Kupscznk was not paid a five percent commission  for example, for the sale of certain machines and on a Navy contract described by Boos as "seriously overpriced."
The events leading to Kupscznk's resignation began in August of 1992 when Boos began to be dissatisfied with what he characterized as Kupscznk's excessive compensation. Indeed, Kupscznk was paid over $100,000 for several years. Boos began to feel that Kupscznk was collecting commissions for work he did not do. Boos viewed as particularly unfair Kupscznk's collection of a very large commission for a project involving the Howard Frankland bridge, work which Boos himself procured. Accordingly, after informing Kupscznk of his unhappiness, Boos cut Kupscznk's commission from five percent to two percent effective February 15, 1993, with the additional condition that no commissions would be paid if the company did not make a twenty-five percent net profit. This arrangement was applicable to other employees, as well. Although Kupscznk told Boos he did not like the reduction in his commission, he continued to work for Blasters after the revised commission policy became effective. On May 13, 1993, Kupscznk signed a structure and terms sheet detailing how the new commissions were to be paid. In May of 1993 Kupscznk received no commission because Blasters did not meet the required profit level. Kupscznk anticipated he would *890 not be paid any commissions in June, a slow month. On July 1, 1993, Kupscznk quit.
Kupscznk's behavior following his resignation, and to some degree immediately prior to his termination, violated the noncompetition agreement. He formed a waterblasting business and solicited or accepted business from Blasters' customers, including the United States Navy and Gaffin Environmental. The agreement Kupscznk violated was valid on its face. It protected Blasters' legitimate business interests. Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. 2d DCA 1991) (trade secrets and confidential business lists and information, customer goodwill, and specialized training). The unique methodology of highway paint stripe removal is Blasters' trade secret or, at a minimum, confidential business information, and its misappropriation by Kupscznk caused Blasters irreparable harm. See § 542.33, Fla. Stat. (1991); Hapney; Sarasota Beverage Co. v. Johnson, 551 So.2d 503 (Fla. 2d DCA 1989).
Kupscznk claimed at the hearing on the motion to dissolve that Blasters' unilateral reduction of his commission constituted a prior breach of their employment agreement, rendering the noncompetition agreement a nullity and thus impossible to breach. He has relied on Troup v. Heacock, 367 So.2d 691 (Fla. 1st DCA 1979), a case we find not applicable in the present setting. The trial court in Troup refused to enforce a covenant not to compete that was part of a written employment agreement providing Troup, an insurance salesman, with a $125 weekly draw. The contract did not provide for reduction of the draw. Nevertheless, without Troup's consent Heacock reduced Troup's draw to $100 and then to $50 per week. Heacock then fired Troup. The first district held that Heacock's actions amounted to a breach of the employment contract and had the effect of releasing Troup from any obligations to Heacock under the covenant not to compete. The court rejected the trial court's award of an injunction as "contrary to equity," which, "if allowed to stand, would result in inverse peonage." 367 So.2d at 692. Unfortunately, some critical facts are missing from the opinion, including the reasons for Troup's termination, the contractual term of duration, if any, and the amount of time that elapsed between Troup's employment, Heacock's reducing his draw, and Troup's termination.
In Thomas v. Federal Insurance Agency, 51 B.R. 653 (M.D.Fla. 1985), the bankruptcy court followed Troup and concluded that a material breach by an employer would relieve the employee or, as in Thomas, the independent contractor, from his or her obligations under a covenant not to compete. In Thomas, however, the contract specified material terms, such as the employer's obligation to give its agent sixty days' notice before terminating the draw aspect of the agreement, together with the requirements of written warning to the agent of any defects in performance and payment of an annual $100.00 fee to maintain the effectiveness of the noncompetition agreement. Because the employer did not comply with these terms, the breach was material and the noncompetition clause was deemed unenforceable.
Details paralleling Thomas' contractual relationship with Federal Insurance Agency are either unstated or missing in Troup and are absent in Kupscznk's case. Blasters was not contractually bound to give Kupscznk written or even oral notice before altering the terms of the commission agreement. Furthermore, there existed no payment precondition for the enforcement of the covenant.
More important, however, is the fact that Kupscznk's employment lacked the essential term of duration. As was said in Ross v. Twenty-Four Collection, Inc., 617 So.2d 428 (Fla. 3d DCA 1993),
[T]he breach of contract claim is not actionable as a matter of law because it is based on a contract of employment which does not provide for a definite term of employment and was therefore terminable at will. No action may be maintained for the breach of an employment contract terminable at will.
Our court, in Muller v. Stromberg Carlson Corp., 427 So.2d 266, 268 (Fla. 2d DCA 1983), stated: "We see no justification to depart *891 from long established principles that an employment contract requires definiteness and certainty in its terms." In this case the course of dealings by the parties indicates that there was never any intent that the commission structure could not be modified, and Kupscznk was notified of and did accept the final change in his compensation, albeit grudgingly.
In sum, judicial acceptance of Kupscznk's contentions would have the result that an employer, faced with changing economic circumstances, would not be empowered to modify to any degree its employee's compensation without potentially losing the benefit of the noncompetition agreement. The facts show that the initial negotiations between Kupscznk and Blasters were at arms' length, and that Kupscznk became a high ranking employee in a firm that developed sophisticated equipment to perform services for its customers. Blasters' interest in enforcement of the agreement against a vice president of some twelve years who had access to technical information, customer lists, and trade secrets cannot be overstated.
We recognize, however, that in rare circumstances equitable considerations could possibly render a noncompetition agreement void. For instance, had Blasters hired Kupscznk under the same terms and then terminated him without cause after a very short time, even though the termination would not be wrongful under the Florida at-will employment doctrine, Blasters' conduct might be deemed unconscionable and a court of equity would not permit its perpetuation by entry of an injunction. See Kendall B. Coffey & Thomas T. Nealon, III, Noncompete Agreements under Florida Law: A Retrospective and a Requiem?, 19 Fla.St. U.L.Rev. 1105, 1132 (1992).
Because the agreement and course of dealings between Kupscznk and Blasters constituted normal business negotiations and were devoid of any element of unconscionability, the trial court correctly entered a temporary injunction enforcing the covenant not to compete. The contract prohibits Kupscznk from soliciting Blasters' customers or otherwise engaging in business similar to Blasters' for a period of three years "within the territory covered by Blasters in the operation of its business." The trial court should consider, however, whether the time and area restrictions of the noncompetition agreement are reasonable. See Santana Products Co. v. Von Korff, 573 So.2d 1027 (Fla. 2d DCA 1991); Joseph U. Moore, Inc. v. Neu, 500 So.2d 561 (Fla. 2d DCA 1986).
Accordingly, we affirm the trial court's order but remand for definition and determination of the temporal and geographical scope of the agreement.
PATTERSON and QUINCE, JJ., concur.