482 So.2d 486 (1986)
CORDIS CORPORATION, Appellant/Cross-Appellee,
v.
Gregory B. PROOSLIN, Appellee/Cross-Appellant.
No. 85-1783.
District Court of Appeal of Florida, Third District.
January 21, 1986.
*487 Steel, Hector & Davis and Gerald J. Houlihan and Nancy E. Thofner, Miami, for appellant/cross-appellee.
Corlett, Killian, Hardeman, McIntosh & Levi, Hershoff & Levy and Jay Levy, Miami, for appellee/cross-appellant.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
JORGENSON, Judge.
This is an appeal and a cross-appeal from a non-final order which granted in part Prooslin's motion for temporary injunction to prevent Cordis Corporation [hereinafter Cordis] from enforcing the provisions of covenants not to compete contained in an agreement between Cordis and Prooslin and which denied in part Cordis's motion for temporary injunction to enforce the covenants not to compete. We affirm.
Prooslin was hired by Cordis in 1981 as a sales representative in the company's angio-pacemaker division. At the commencement *488 of his employment, Prooslin executed an agreement [hereinafter the Fair Competition Agreement] which contained the following restrictive covenants of relevance to this appeal:
1. That during your full-time employment with Cordis and for six months thereafter, you [Prooslin] will not directly or indirectly own, operate, manage, consult with, control, participate in the management or control of, be employed by, maintain or continue any interest whatsoever in any enterprise that designs, manufactures, distributes, markets or promotes medical devices or their components in competition with Cordis (a "Conflicting Organization"); provided that these restrictions shall apply only in geographical area or areas for which you were primarily responsible within twelve months prior to termination of such full-time employment.
* * * * * *
4. You [Prooslin] agree that during your full-time employment with Cordis and for one year after termination of such employment, you will not solicit or contact any of the customers, clients, or leads with whom you have had contact during the last twelve months of your full-time employment by Cordis for the purpose of sales of products or services in competition with Cordis and will not disclose the names of Cordis' customers, clients, and leads or any part thereof, to any person or entity for any reason or purpose whatsoever.
Prooslin was assigned a territory in which to sell pacemakers and assist physicians with the actual implementation of the devices. Through the performance of his duties, Prooslin established significant personal relationships with the physicians/clients.
Prooslin was highly successful as a sales representative. Eventually, Cordis desired that Prooslin transfer to a non-developed territory. To induce Prooslin to move to this territory, Cordis offered certain financial incentives. An agreement which was memorialized in an inter-office memorandum [hereinafter the memorandum agreement] provided that Prooslin would receive a minimum commission check each month for an eighteen-month period. In reliance upon the memorandum agreement, Prooslin began working the new territory in May, 1985.
In early June, 1985, Prooslin learned that Cordis was not going to comply with the financial terms of the memorandum agreement. Prooslin requested that he be reassigned to his old territory, but his request was denied. Prooslin became hostile and, subsequently, was dismissed from his employment. Prooslin applied for employment with certain competitors of Cordis and was advised that he would not be considered for employment until and unless the question of the enforceability of the restrictive covenants is "resolved."
Prooslin brought suit against Cordis seeking, inter alia, declaratory relief as to his rights and obligations under the restrictive covenants, temporary and permanent injunctive relief restraining Cordis from enforcing the restrictive covenants, and damages for breach of contract. Upon Prooslin's motion for temporary injunction and after Cordis received proper notice, an adversarial evidentiary hearing was held. Prooslin was the only witness to testify. At the close of the hearing, Cordis made an ore tenus motion for a temporary injunction to prevent Prooslin from violating the restrictive covenants. Prooslin did not object to the timing or form of Cordis's motion or to the fact that Cordis had not filed a pleading seeking such relief.
After hearing Prooslin's testimony and reviewing the documents introduced into evidence, the trial court granted Prooslin's motion for temporary injunction "with the sole exception of that part of ... the `Fair Competition Agreement' which prevents ... [Prooslin] from directly soliciting customers of ... [Cordis] with whom he had contact during the last twelve (12) months of employment with ... Cordis." The court ordered Prooslin to abide by that part of the Fair Competition Agreement which restricts Prooslin from directly soliciting *489 customers of Cordis and, thus, at least implicitly granted Cordis's motion to that extent.
At the outset, we note that the restrictive covenants can only be enforced by court order and that Prooslin has no right to prevent Cordis from going to court to seek an injunction which would restrain Prooslin from violating the covenants. Nevertheless, Cordis did not object to Prooslin's motion on this ground, and the issue regarding the temporary enforcement of the restrictive covenants was tried with the consent of both parties. Prooslin, with Cordis's acquiescence, advanced the resolution of this issue by getting Cordis to "lay its cards on the table." Given this posture, we treat the hearing below  as did the parties  as a determination of Cordis's right to the temporary enforcement of the restrictive covenants. The fact that the trial court's order is set in terms of granting Prooslin's motion for temporary injunction rather than denying Cordis's motion on the merits is immaterial as the practical result is the same. We now address the merits.
There is no question that, but for Prooslin's uncontroverted testimony that Cordis breached the agreement regarding his assignment in the undeveloped territory, Cordis would be entitled to a temporary injunction restraining Prooslin from violating the restrictive covenants.[1]
Section 542.33(2)(a), Florida Statutes (1983), specifically provides for enforcement of non-competition agreements by injunction. Injunctive relief has become the favored remedy in cases involving covenants not to compete. U.S. Floral Corp. v. Salazar, 475 So.2d 1305 (Fla. 3d DCA 1985); Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1137 (Fla. 4th DCA 1981). This favored status is recognized because money damages for breach of non-competition agreements are either not susceptible to proof with the required degree of certainty, Capelouto v. Orkin Exterminating Co., 183 So.2d 532, 535 (Fla.), appeal dismissed, 385 U.S. 11, 87 S.Ct. 78, 17 L.Ed.2d 10, reh'g denied, 385 U.S. 964, 87 S.Ct. 390, 17 L.Ed.2d 310 (1966); see Miller Mechanical, Inc. v. Ruth, 300 So.2d 11, 12 (Fla. 1974), or "if susceptible of reasonable proof, may not compensate for all aspects of such a violation." Capraro v. Lanier Business Products, Inc., 445 So.2d 719, 721 (Fla. 4th DCA 1984) (quoting Silvers, 403 So.2d at 1137), approved, 466 So.2d 212 (Fla. 1985).
A temporary injunction is an extraordinary and drastic remedy which should be sparingly granted. Rollins Protective Services Co. v. Lammons, 472 So.2d 812, 813 (Fla. 5th DCA 1985); Florida Land Co. v. Orange County, 418 So.2d 370, 372 (Fla. 5th DCA 1982); Jennings v. Perrine Fish Market, Inc., 360 So.2d 434, 435 (Fla. 3d DCA 1978). Generally, a party seeking a temporary injunction must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any *490 possible harm to the respondent, and (4) that the granting of a temporary injunction will not disserve the public interest.[2]E.g., Graham v. Edwards, 472 So.2d 803, 806 (Fla. 3d DCA 1985); Department of Business Regulation, Division of Alcoholic Beverages & Tobacco v. Provende, Inc., 399 So.2d 1038, 1041 (Fla. 3d DCA 1981). In the context of covenants not to compete or not to divulge trade secrets, this general rule has been relaxed so that irreparable injury may be presumed. Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985).
It is Prooslin's contention that Cordis is not entitled to the temporary enforcement of the Fair Competition Agreement because the undisputed evidence introduced below was that Cordis breached the memorandum agreement. Cordis relies on Tiffany Sands, Inc. v. Mezhibovsky, 463 So.2d 349 (Fla. 3d DCA 1985), and argues that its right to temporary enforcement of the restrictive covenants is not adversely affected by Prooslin's claim that Cordis breached the contract.
In Tiffany Sands, the trial court denied the employer a temporary injunction to enforce a non-competition provision of an employment contract. On appeal, the employee argued that the trial court's order should be affirmed because, inter alia, the employer materially breached the contract. This court held that it did not need to address that argument because "the purpose of a temporary injunction is not to resolve a dispute on the merits, but rather to preserve the status quo until the final hearing when full relief may be granted." Tiffany Sands, 463 So.2d at 350-51.
We think Cordis reads Tiffany Sands too broadly. The court specifically limited its holding in that case to "the pleadings and the evidence produced at the hearing on the motion for preliminary injunction." Id. at 351. There is no indication in Tiffany Sands as to whether or to what degree the evidence produced at the hearing supported the employee's claim that the employer breached the employment contract.
In Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 1305, 128 So. 821, 824 (1930), the supreme court held that "[a] party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity." In the non-competition and tradesecret context, an employer's breach of the employment contract is a relevant factor in determining whether the employer is entitled to a temporary injunction, see Channell v. Applied Research, Inc., 472 So.2d 1260, 1262 (Fla. 4th DCA 1985); Capraro, 445 So.2d at 721; Suave Shoe Corp. v. Fernandez, 390 So.2d 799, 800 (Fla. 3d DCA 1980), at least where the breach involves a dependent covenant. Capraro, 445 So.2d at 721; Suave Shoe Corp., 390 So.2d at 800. See generally 11 Fla.Jur.2d Contracts § 169 (1979). The evidence of Cordis's breach was, therefore, relevant. It was Cordis's burden to demonstrate the likelihood of success on the merits as to this issue. Cf. Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Productions, 479 F. Supp. 351, 355 (N.D.Ga. 1979) (on motion for preliminary injunction plaintiff must demonstrate likelihood of success on the merits as to asserted affirmative defenses as well as to elements of plaintiff's prima facie case).
The granting or denying of a temporary injunction is a matter within the discretion *491 of the trial court, and the exercise of such discretion will not be disturbed on appeal unless a clear showing is made that there was an abuse. E.g., Northwestern National Insurance Co. v. Greenspun, 330 So.2d 561, 563 (Fla. 3d DCA 1976); Stirling Music Co. v. Feilbach, 100 So.2d 75, 76 (Fla. 3d DCA 1958). In exercising its discretion, the court is guided by established rules and principles of equity jurisprudence, in view of the particular facts presented in the case. Jennings, 360 So.2d at 435; Muss v. City of Miami Beach, 312 So.2d 553, 554 (Fla. 3d DCA), cert. denied, 321 So.2d 553 (Fla. 1975). The trial court must use a balancing-type approach, balancing the possible beneficial results on the one hand with the possible detrimental results on the other, Murphy v. Daytona Beach Humane Society, 176 So.2d 922, 926 (Fla. 1st DCA 1965); Stirling Music Co., 100 So.2d at 76, and the threatened hardships associated with the issuance or denial of the injunction with the degree of likelihood of success on the merits. Florida Medical Association v. U.S. Department of Health, Education and Welfare, 601 F.2d 199, 203 n. 2 (5th Cir.1979); Louis v. Meissner, 530 F. Supp. 924, 925 (S.D.Fla. 1981).
At the hearing, Prooslin presented uncontroverted evidence that Cordis breached the employment contract. A fair reading of the record convinces us that the trial court properly balanced the relevant factors and did not abuse its discretion. The trial court reasonably concluded, in light of the doubt cast on Cordis's ability to succeed at trial and after weighing the possible hardships confronting each of the parties, that, prior to final resolution on the merits,[3] Prooslin should be restrained only from directly soliciting Cordis's customers. No abuse of discretion has been shown.
The order under review is accordingly AFFIRMED.
NOTES
[1] Prooslin relies upon Deanza Corp. v. Vonoflorio, 393 So.2d 1146 (Fla. 4th DCA 1981), and argues that Cordis was not entitled to temporary injunctive relief because Cordis did not file a pleading requesting such relief. The former subsection (a) of Florida Rule of Civil Procedure 1.610 provided that "[n]o injunction shall be granted until a complaint therefor is filed." This language was deleted in The Florida Bar. In re Rules of Civil Procedure, 391 So.2d 165, 175 (Fla. 1980). The committee note states: "The requirement that an injunction not be issued until a complaint was filed has been deleted as unnecessary. A pleading seeking an injunction or temporary restraining order must still be filed before either can be entered." The Florida Bar. In re Rules of Civil Procedure, 391 So.2d at 176. The second district court of appeal, in Lingelbach's Bavarian Restaurants, Inc. v. Del Bello, 467 So.2d 476 (Fla. 2d DCA 1985), determined that the above quoted statement from the committee note was erroneous and that a verified motion is sufficient. We need not, and do not, decide whether, under the present rules, such a motion  or, as Cordis made in this case, an ore tenus motion  alone is sufficient because, at the hearing, Prooslin failed to object to the absence of a pleading and thereby waived any objection. See Smith v. Housing Auth. of Daytona Beach, 148 Fla. 195, 198, 3 So.2d 880, 881 (1941).
[2] Variants of this formula have been propounded. In Wilson v. Sandstrom, 317 So.2d 732, 736 (Fla. 1975), cert. denied, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976), for example, the supreme court stated that a temporary injunction is properly granted where irreparable harm will otherwise result, the moving party has a clear legal right thereto, such party has no adequate remedy at law, and the public interest will not be disserved. See also Florida Land Co., 418 So.2d at 372; Playpen S., Inc. v. City of Oakland Park, 396 So.2d 830, 830-31 (Fla. 4th DCA 1981). The clear-legal-right factor is equivalent to, or at least envelops, the criterion of a substantial likelihood of success on the merits. See Reinhold Constr., Inc. v. City Council for Vero Beach, 429 So.2d 699 (Fla. 4th DCA 1983).
[3] We note that, in the event Cordis prevails after a full trial on the merits, the trial judge is empowered to extend the restrictive periods beyond the times specified in the Fair Competition Agreement in order to insure Cordis receives the full benefit of the restrictions. See Capelouto, 183 So.2d at 534-35. The availability of this remedy provides further support for our conclusion that the trial court did not err in partially denying Cordis's motion for temporary injunction.