603 So.2d 516 (1992)
SUN ELASTIC CORPORATION, Appellant,
v.
O.B. INDUSTRIES, Julio Villatoro and Alvaro Bazurto, Appellees.
No. 91-2199.
District Court of Appeal of Florida, Third District.
June 9, 1992.
Rehearing Denied September 16, 1992.
Paul Morris, Coral Gables, for appellant.
David Bolton, Coral Gables, for appellees.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
SCHWARTZ, Chief Judge.
Sun Elastic appeals from the denial of a temporary injunction against the violation of a noncompetitive agreement with a former employee, Julio Villatoro. We reverse.
It is admitted that, after becoming employed by O.B. Industries, Villatoro directly solicited Sun's existing customers. Even under the 1990 amendment to section 542.33(2)(a), Florida Statutes (1989),[1] which was evidently intended to restrict the availability *517 of injunctive relief in these cases,[2] the existence of an "irreparable injury" and thus the enjoinability of a violation are "presumed" from that conduct. § 542.33(2)(a), Fla. Stat. (Supp. 1990). See Grant v. Robert Half International, Inc., 597 So.2d 801 (Fla. 3d DCA 1992). Since that is true, the cases holding that a trial court is required to enjoin the violation of a noncompetitive agreement which is reasonable as to its duration and geographical limitation remain directly applicable and controlling.[3]Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985); Miller *518 Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974); Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702 (Fla. 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988); Twenty Four Collection, Inc. v. Keller, 389 So.2d 1062 (Fla. 3d DCA 1980), review denied, 419 So.2d 1048 (Fla. 1982); Answer All Telephone Secretarial Serv., Inc. v. Call 24, Inc., 381 So.2d 281 (Fla. 5th DCA 1980); Empiregas, Inc. of Pensacola v. Thomas, 359 So.2d 15 (Fla. 1st DCA 1978), dismissed, 364 So.2d 893 (Fla. 1978); Royal Servs., Inc. v. Williams, 334 So.2d 154 (Fla. 3d DCA 1976); Foster & Co. v. Snodgrass, 333 So.2d 521 (Fla. 2d DCA 1976); Barco Chemicals Div., Inc. v. Colton, 296 So.2d 649 (Fla. 3d DCA 1974); Storz Broadcasting Co. v. Courtney, 178 So.2d 40 (Fla. 3d DCA 1965), cert. denied, 188 So.2d 315 (Fla. 1966); American Bldg. Maintenance Co. v. Fogelman, 167 So.2d 791 (Fla. 3d DCA 1964); Atlas Travel Serv., Inc. v. Morelly, 98 So.2d 816 (Fla. 1st DCA 1957).
For this reason, the order under review is reversed and the cause remanded with directions to enjoin the violation of the agreement in question. The terms of the injunction shall be in accordance with the trial court's subsequent determinations of (a) the reasonableness of the contract's time and space restrictions, see Twenty Four Collection, 389 So.2d at 1064, and (b) the appropriate commencement date. Twenty Four Collection, 389 So.2d at 1064.
Reversed and remanded with directions.
NESBITT, J., concurs.
COPE, Judge (specially concurring).
I am unable to agree with the majority's suggestion that section 542.33, Florida Statutes (1991), creates what amounts to an irrebuttable presumption. The legislature used the word "presumption" without adornment; under settled Florida law, an ordinary presumption is rebuttable. § 90.301(2), Fla. Stat. (1991); see also Straughn v. K & K Land Management, Inc., 326 So.2d 421, 424 (Fla. 1976). If the legislature meant to create a conclusive presumption, it knew how to say so.
Nor can I agree that there is anything illogical about creating a rebuttable presumption in the statute now before us. In some cases the contacting of existing customers will occasion irreparable injury; in others it will not. If a noncompetition agreement has a valid liquidated damages clause, for example, there is by definition no irreparable injury. If the "existing customer" is a governmental entity which advertises for competitive bids, the ex-employee causes no injury, much less irreparable injury, by submitting a bid  even though submission of a bid could be characterized as "direct solicitation of existing customers." § 542.33(2)(a), Fla. Stat. (1991). If the nature of the industry is one in which damages can, in fact, be calculated, there is no irreparable injury.
It is no accident that section 542.33 is codified in chapter 542, which regulates combinations restricting trade and commerce. One effect of a noncompetition *519 agreement is to limit competition and inhibit the free movement of labor. Such agreements are frequently contracts of adhesion, imposed on employees on a take-it-or-leave-it basis. When enforced, they may well cost the employee his or her job.[*]
In view of those considerations, the legislature has  rightly in my view  decided to limit noncompetition agreements to a narrow field of operation. The recent amendments to section 542.33 have reduced the number of protectable interests, and forbid enforcement of a noncompete agreement "where there is no showing of irreparable injury." § 542.33(2)(a), Fla. Stat. (1991). The legislature intended to change prior law, and that purpose specifically included an intention to overrule Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985), and its antecedents, enacting instead the views expressed in the Capraro dissent. It is inappropriate to exhume precedent the 1990 legislature so purposely interred.
While I disagree with the majority's reasoning, I concur in the result. The hearing in the trial court was on the motion for temporary injunction and was very brief. On the abbreviated record now before us, I do not believe that appellee rebutted the presumption operating in appellant's favor. On that basis I concur in the judgment. What the facts will prove to be at final hearing remains to be seen.
NOTES
[1] The present version of the statute is as follows:

542.33 Contracts in restraint of trade valid. 
(1) Notwithstanding other provisions of this chapter to the contrary, each contract by which any person is restrained from exercising a lawful profession, trade, or business of any kind, as provided by subsections (2) and (3) hereof, is to that extent valid, and all other contracts in restraint of trade are void.
(2)(a) [O]ne who is employed as an agent, independent contractor, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area ... so long as such employer, continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction. However, the court shall not enter an injunction contrary to the public health, safety, or welfare or in any case where the injunction enforces an unreasonable covenant not to compete or where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined... . [e.s.]
§§ 542.33(1), (2)(a), Fla. Stat. (1991).
[2] Effect of Proposed Changes:
The bill would prohibit a court from entering an injunction when the injunction would be contrary to the public health, safety or welfare, when the injunction enforces an unreasonable covenant to not compete or when there is no showing of an irreparable injury. This would overturn the decision in Caparo [sic] v. Lanier Business Products, Inc., Supra, and require the party seeking injunctive relief to plead and prove irreparable injury.
The bill would continue to allow the presumption of irreparable injury in connection with the use of trade secrets, customer lists, or direct solicitation of existing customers. ... Staff of Fla.S.Comm. on Judiciary-Civ., CS for SB 2642 (1990) Staff Analysis 2 (May 17, 1990) (on file with committee) [hereinafter Judiciary-Civ.Comm. CS for SB 2642 Staff Analysis]. [e.s.]
Hapney v. Central Garage, Inc., 579 So.2d 127, 133 n. 4 (Fla.2d DCA 1991), review denied, 591 So.2d 180 (Fla. 1991).
[3] The existence of one of the specific exceptions to the "no presumption of irreparable injury" rule contained in the 1990 amendment makes it unnecessary for us to consider the validity of the direct holding in Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla.2d DCA 1991), review denied, 591 So.2d 180 (Fla. 1991), that injunctive relief may (and perhaps must) be withheld in an "ordinary" non-compete case. Accord AGS Computer Servs., Inc. v. Rodriguez, 592 So.2d 801 (Fla. 4th DCA 1992). But see Hapney, 579 So.2d at 135 (Lehan, A.C.J., dissenting).

For the same reason, it is unnecessary to consider the possible consequences of the fact that, in plainly seeking to limit the enforceability of those agreements, the legislature chose language which makes little semantic or legal sense. It has said that an injunction will not lie unless "irreparable injury" from a violation is demonstrated or presumed. It is thoroughly established, however, that although this was obviously the way the phrase is used in the statute,
[i]n the sense in which it is used as a stated prerequisite for granting an injunction, the term "irreparable injury" does not refer to the degree of harm caused by the offending act, see 42 Am.Jur.2d Injunctions § 49 (1969); in other words, it is not required ... that the defendants' breach has resulted in a relatively serious or irremedial blow to the plaintiff's economic health.
Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702, 702 (Fla.3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988). To the contrary,
`irreparable' means injury `whether great or small,' Anderson v. Souza, 38 Cal.2d 825, 834, 243 P.2d 497, 503 (1952), which is not `reparable,' that is able to be adequately repaired or redressed in a court of law by an award of money damages. See Puga v. Suave Shoe Corp., 374 So.2d 552 (Fla.3d DCA 1979); 17 Fla.Jur.2d Injunctions § 22 (1981). In the present area of noncompete agreements, which are validated by Section 542.33, Florida Statutes (1981), our supreme court has applied that aspect of the `irreparable injury' rule under which [i]t is held that the term `irreparable damage' does not have reference to the amount of damage caused, but rather to the difficulty of measuring the amount of damages inflicted. Thus, an injury is irreparable where the damage is estimable only by conjecture, and not by any accurate standard. 42 Am.Jur.2d § 49, at 790.
Air Ambulance Network, Inc., 511 So.2d at 702-03; see Capraro v. Lanier Business Products, Inc., 466 So.2d 212 (Fla. 1985); Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974); Miami Electronics Center, Inc. v. Saporta, 597 So.2d 903 (Fla. 3d DCA 1992). See generally Douglas Laycock, The Death of the Irreparable Injury Rule 47, 70 n. 114 (1991) (citing Capraro, 466 So.2d at 212). But even the legislature cannot statutorily decree that such an "irreparable" injury is not irreparable any more than it can turn a turnip into a turkey. Its attempt to do so may well have rendered a valid contract, see § 542.33(1), Fla. Stat. (1991), completely unenforceable and thus a nullity. See Hapney, 579 So.2d at 135 (Lehan, A.C.J., dissenting). In other words, a breach may not be compensated by money damages because, as a matter of fact, they are not reasonably ascertainable and cannot be vindicated by injunctive relief because, as a matter of legislative fiction, there is no noncompensable injury. We do not dwell upon the possible constitutional objections to this quintessential Catch-22, whether as a possible violation of a contracting party's substantive due process right against the deprivation of property by a totally arbitrary law, 10 Fla.Jur.2d Constitutional Law § 89, at 305 n. 71, (1979), or as an impermissible interference with the purely judicial function of determining the rules for the granting of equitable relief. See Art. V, § 2(a), Fla. Const.; In re Clarification of Fla.Rules of Practice & Procedure, 281 So.2d 204 (Fla. 1973); Johnson v. State, 308 So.2d 127 (Fla. 1st DCA 1975), aff'd, 346 So.2d 66 (Fla. 1977); McAllister v. McAllister, 147 Fla. 647, 655-56, 3 So.2d 351, 354 (1941).
The burden of Laycock's excellent work, Death of the Irreparable Injury Rule, supra, is that the trend of recent cases is to grant injunctions even when "irreparable injury," as traditionally defined, does not strictly exist. The so-called "death" of the doctrine is thus a noble and dignified one; it is not the premeditated homicide perpetrated by the legislature.
[*] The legal profession has long recognized these dangers. The Rules of Professional Conduct expressly outlaw any "partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement... ." Fla.R.Prof.Conduct 4-5.6(a).