687 So.2d 329 (1997)
Martin J. BRADLEY, III, Appellant,
v.
HEALTH COALITION, INC., Appellee.
No. 96-1789.
District Court of Appeal of Florida, Third District.
February 5, 1997.
*331 Mesa, Rodriguez & Machado and Manuel A. Mesa, Miami, for appellant.
Steele & Hanson and John C. Hanson, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
COPE, Judge.
Martin J. Bradley, III appeals a temporary injunction enforcing a covenant not to compete. We reverse the temporary injunction and remand for consideration of former employee Bradley's defenses to the employer's claims.

I.
In March 1993, employee Bradley entered into an employment agreement with employer Health Coalition, Inc. Bradley was hired to be a salesperson for the employer's blood plasma products. The employment contract contained a covenant that the employee would not compete for a period of two years after the termination of employment. The covenant not to compete prohibits the solicitation of "any active, paid up customers of the corporation," protects the confidentiality of corporate information, and contains various provisions related to enforcement.
In April 1994, Bradley's employment ended. The employer claims that Bradley voluntarily resigned. Bradley asserts that he was forced to resign after he refused the employer's instructions to engage in improper business practices.
In February 1996, the employer filed an action asserting that Bradley had gone to work for a competing company, Bio-Med, Inc., and was selling blood plasma products. The trial court entered a temporary injunction enforcing the noncompetition agreement. From an order modifying and extending[1] the temporary injunction, Bradley has appealed.

II.
The enforceability of a covenant not to compete under the Florida Statutes is governed by the law in effect at the time the agreement was entered into. Gupton v. Village Key & Saw Shop, Inc., 656 So.2d 475, 477-79 (Fla.1995). The statute applicable here is section 542.33, Florida Statutes (1991).[2]
As amended in 1990, section 542.33 has placed restrictions on the availability of injunctive relief to enforce a covenant not to compete. Sun Elastic Corp. v. O.B. Industries, 603 So.2d 516, 516-17 (Fla. 3d DCA 1992); see also Gupton, 656 So.2d at 478. See generally Kendall B. Coffey & Thomas F. Nealon III, Noncompete Agreements Under Florida Law: A Retrospective and a Requiem?, 19 Fla.St.U.L.Rev. 1105 (1992).[3]
*332 The statute provides, in part, that "the court shall not enter an injunction ... where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined." § 542.33(2)(a), Fla.Stat. (1991).
Bradley first contends that the noncompetition agreement cannot be enforced by injunction because the noncompetition agreement contains a liquidated damages clause. Bradley reasons that an irreparable injury is one for which there is no adequate remedy at law. See Sun Elastic Corp. v. O.B. Industries, 603 So.2d at 517 n. 3. The noncompetition agreement contains a liquidated damages clause which purports to impose liquidated damages of $50,000 for each Health Coalition customer Bradley solicits.[4] Bradley urges that since the parties have agreed on a liquidated damages clause, it follows that there is an adequate remedy at law and that the request for an injunction must be denied.
We reject this argument and follow section 361 of the Restatement (Second) of Contracts. The Restatement provides:
§ 361. Effect of Provision for Liquidated Damages
Specific performance or an injunction may be granted to enforce a duty even though there is a provision for liquidated damages for breach of that duty.
Comment:

a. Rationale. A contract provision for payment of a sum of money as damages may not afford an adequate remedy even though it is valid as one for liquidated damages and not a penalty.... Merely by providing for liquidated damages, the parties are not taken to have fixed a price to be paid for the privilege not to perform. The same uncertainty as to the loss caused that argues for the enforceability of the provision may also argue for the inadequacy of the remedy that it provides. Such a provision does not, therefore, preclude the granting of specific performance or an injunction if that relief would otherwise be granted. If the provision is unenforceable as one for a penalty, the same result follows, but because of the ineffectiveness of the clause rather than the operation of the rule here stated. If equitable relief is granted, damages for such breach as has already occurred may also be awarded.... These damages will ordinarily be limited to the actual loss suffered unless the provision for liquidated damages affords a suitable basis for calculating such damages.
Restatement (Second) of Contracts § 361 (1981) (cross-references omitted). The illustrations to section 361 are based on noncompetition agreements. Id. illus. 1 & 2.
The parties are, of course, free to agree otherwise:

b. Provision for alternative performance distinguished. Although parties who merely provide for liquidated damages are not taken to have fixed a price for the privilege not to perform, there is no reason why parties may not fix such a price if they so choose. If a contract contains a provision for the payment of such a price as a true alternative performance, specific performance or an injunction may properly be granted on condition that the alternative performance is not forthcoming. But if the obliger chooses to pay the price, equitable relief will not be granted.
Id. comment b.
In the present case the contract contains an ordinary liquidated damages clause (not a stipulated sum for alternative performance), so the general rule of Restatement section 361 applies. The existence of the liquidated damages clause does not preclude an injunction.

*333 III.
Bradley next contends that the trial court erred by refusing to consider his defenses to the temporary injunction. We agree.

A.
At the injunction hearing Bradley argued that the employer had materially breached the employment agreement, thus releasing him from any further obligation thereunder. He contended that after his employment ended, the employer wrongfully refused to pay certain commissions which he had earned.
The employer argued that the employee's defenses could not be considered at a temporary injunction hearing and could only be heard at the final trial on the merits.[5] The trial court agreed, and declined to hear the employee's claim that the employer had materially breached the agreement. This was error.
"A party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity." Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 1305, 128 So. 821, 824 (1930) (affirming denial of temporary injunction).
"Having committed the first breach, the general rule is that a material breach of the Agreement allows the nonbreaching party to treat the breach as a discharge of his contract liability." In the Matter of Walter W. Thomas, Debtor, 51 B.R. 653, 654 (Bankr.M.D.Fla.1985) (citing Troup v. Heacock, 367 So.2d 691 (Fla. 1st DCA 1979), 11 Fla. Jur.2d Contracts § 169 (1981)); see also Air Ambulance Network, Inc. v. Floribus, 511 So.2d 702, 703 (Fla. 3d DCA 1987) review denied, 520 So.2d 584 (Fla.1988); Cordis Corp. v. Prooslin, 482 So.2d at 490. If the employer wrongfully refuses to pay the employee his compensation, the employee is relieved of any further obligation under the contract and the employer cannot obtain an injunction.
The applicant for a temporary injunction in a noncompetition case must show, among other things, a substantial likelihood of success on the merits of its claim. Cordis Corp. v. Prooslin, 482 So.2d at 489.[6] The burden of persuasion rests on the applicant.
At a hearing on an application for temporary injunction, the defending party may offer the defense that the moving party has materially breached its obligations under the contract. See Seaboard Oil Co. v. Donovan, 99 Fla. at 1302-06, 128 So. at 823-25; Cordis Corp. v. Prooslin, 482 So.2d at 490.
Once the defendant employee brings forth evidence of the plaintiff employer's material breach of the employment contract, the burden is on the plaintiff employer "to demonstrate the likelihood of success on the merits as to this issue." Cordis Corp. v. Prooslin, 482 So.2d at 490 (citations omitted). "[P]laintiff must demonstrate likelihood of success on the merits as to asserted affirmative defenses as well as ... elements of plaintiff's prima facie case." Id. (citation omitted).
We reverse the temporary injunction and remand for a hearing on the employee's defense of nonpayment.

B.
The employee also attempted to offer the defense that the injunction should be denied under the doctrine of unclean hands. The employee contended that he was forced to resign after he refused to resell certain plasma products that had been returned by a customer. The employee believed the product had been rendered unsafe for medical use because of its handling during shipping. The employer took the position that the product *334 was safe for consumption and ordered the employee to resell it.
The employee also contends that he was ordered to alter certain invoices to charge higher prices than the customers had agreed to. The employee says this constituted a fraud on the customers and he refused to obey the instruction. The employer denies that any such instruction was given.
The trial court declined to consider either of these defenses, ruling that they could not be considered at a temporary injunction hearing. Consistent with the reasoning of the preceding section, this was error. The employee was entitled to present these defenses against the application for temporary injunction.
In our view, if the employer ordered the employee to sell unfit products, or to alter invoices so as to defraud customers, and the employee was forced to resign for refusing to do so, then the employer would have unclean hands and would not be entitled to an injunction. See Pilafian v. Cherry, 355 So.2d 847, 849 (Fla. 3d DCA), ("One who seeks the aid of equity must do so with clean hands.") (citation omitted), cert. denied, 361 So.2d 834 (Fla.1978); see also Gupton v. Village Key & Saw Shop, 656 So.2d at 478; Cordis Corp. v. Prooslin, 482 So.2d at 489-90 (temporary injunction must not disserve the public interest); § 542.33, Fla. Stat. (1991) ("the court shall not enter an injunction contrary to the public health, safety, or welfare"); Kendall B. Coffey & Thomas F. Nealon III, supra, at 1132.
We remand for a hearing on these defenses as well.

IV.
Because the issue may arise on remand, we consider the employee's alternative arguments that the temporary injunction is overbroad. If on remand the employer makes the required showing of entitlement to an injunction, it will be necessary to consider the injunction's permissible scope.[7]

A.
Bradley contends that the trial court erred by enjoining him from contacting any of Health Coalition's suppliers. Bradley is correct.
Health Coalition buys blood plasma products wholesale from various suppliers and sells those products to hospitals and other health care providers. The products are essentially standard products regularly sold in the medical industry. Under section 542.33, Health Coalition is not entitled to an injunction unless it proves the element of irreparable injury. The statute creates a presumption of irreparable injury in the event of "direct solicitation of existing customers," but the statute contains no such presumption for contacting, or doing business with, suppliers. Health Coalition made no showing of any way in which it would be irreparably injured should Bradley contact any of its suppliers. Consequently, the trial court should not have enjoined Bradley from contacting, or doing business with, Health Coalition's suppliers. Absent proof of irreparable injury, dealing with suppliers may not be enjoined.

B.
The trial court enjoined Bradley from contacting customers of Health Coalition. Bradley contends that there should be a clarification of what is meant by the term "customers." He asserts that, as written, the temporary injunction could be interpreted to prevent Bradley from contacting "after-acquired" customers, that is, new customers obtained by Health Coalition after Bradley's departure on April 28, 1994.
Bradley's point is well taken. The purpose of the statutory provision is to prevent *335 an employee from taking advantage of a customer relationship which was developed during the term of the employee's employment. For present purposes, therefore, "customers" means customers as of the termination date of Bradley's employment, April 28, 1994.

V.
For the stated reasons, the temporary injunction is reversed and the cause remanded for further proceedings consistent herewith.[8]
NOTES
[1] See Capelouto v. Orkin Exterminating Co., 183 So.2d 532, 534-35 (Fla.1966); Kverne v. Rollins Protective Services Co., 515 So.2d 1320, 1321-22 (Fla. 3d DCA 1987); Cordis Corp. v. Prooslin, 482 So.2d 486, 491 n. 3 (Fla. 3d DCA 1986).
[2] Noncompetition agreements entered into on or after July 1, 1996, will be governed by section 542.335, Florida Statutes (Supp.1996). Id. §§ 542.331, 542.335(1). See generally John A. Grant, Jr. & Thomas T. Steele, Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach for the 21st Century, Fla. B.J., Nov. 1996, at 53.
[3] Under the 1990 amendment, a clear distinction must be drawn between (a) the validity of a covenant not to compete, that is, whether the covenant not to compete fits within the scope of section 542.33, and (b) whether a valid covenant not to compete can be enforced by injunction, that is, whether the more stringent injunction standards of section 542.33 are satisfied. See Jewett Orthopaedic Clinic, P.A. v. White, 629 So.2d 922, 925 n. 4 (Fla. 5th DCA 1993).
[4] The noncompetition agreement also allows the employer to claim actual damages in addition to liquidated damages. Bradley has reserved the right to attack the liquidated damages clause as one which imposes a penalty. See Perez v. Aerospace Academy, Inc., 546 So.2d 1139, 1141 (Fla. 3d DCA 1989).
[5] The employer has denied that any further commissions were owed to the employee.
[6] Generally, a party seeking a temporary injunction must establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent, and (4) that the granting of a temporary injunction will not disserve the public interest.

Cordis Corp. v. Prooslin, 482 So.2d at 489-90.
[7] The parties disagree on how to read the injunction order. Health Coalition claims that the injunction enforced the entirety of the noncompetition agreement and that, accordingly, Bradley has been enjoined from engaging in any business which competes with Health Coalition. Although that was the thrust of the original ex parte injunction entered in this case, the subsequent modification order greatly reduced the injunction's scope. As we interpret the modification order, Bradley was not enjoined from engaging in a competing business. He was, however, enjoined from contacting customers and suppliers of Health Coalition, Inc.
[8] At oral argument the parties debated what the maximum duration of the temporary injunction can be in this case. See generally cases cited supra note 1. As this issue was not briefed, we express no opinion on it.