FERGUSON, District Judge,
dissenting:
I respectfully dissent.
It is important to note at the outset that this highly publicized case does not arise from a criminal proceeding. For that reason, in my opinion, the majority’s scholarly discussion of probable cause is not disposi-tive on the questions presented. Central to one of the causes of action is whether reasonable suspicion as a basis for the termination of a teacher’s employment was obtained in violation of an employment agreement.
There was no police detention or arrest; no law enforcement report of a crime; no probable cause affidavit filed; and no magistrate determination of probable cause. What is shown by undisputed facts is that a school security officer, assisted by a city *1334 police canine officer who had been invited to assist the school in enforcement of its anti-drug policy, conducted a sweep search within the walls of a high school campus. During a walk through the student parking lot the dog alerted to the presence of a controlled substance outside the plaintiffs vehicle. On instructions of the school officer the canine officer directed his dog into the plaintiffs automobile through an open window where it allegedly alerted again to the still warm remains of a cigarette which was believed to be an illegal substance. Without securing a warrant, or the teacher’s consent, the school officer entered the plaintiffs vehicle and retrieved the cigarette remnant. Purportedly the cigarette remnant field tested positive for marijuana. All of these events occurred before noon in the student lot where the vehicle was parked, unlocked and with the windows down. The substance was turned over to police and consumed during a police laboratory analysis. It was argued by counsel for Mrs. Hearn, and not disputed, that she was with her class at all times during the morning hours.
We may only speculate as to why no criminal action was taken. Perhaps law enforcement officials decided that (1) a warrant to impound and search the parked and unattended vehicle should have been obtained, (2) the lock down and sweep search for drugs within the confines of the school campus, was a school board matter and not a law enforcement event, (3) a linkage between the contraband and the vehicle owner, under the circumstances, was too tenuous to support a good faith prosecution, or (4) destruction of the infinitesimal amount of contraband during the analysis, without prior notice to potential defendants, jeopardized a prosecution. Notwithstanding the reason it is clear that after the substance was seized by the school board, law enforcement officials totally distanced themselves from any further involvement in the case.
This is a simple civil case based on administrative action where the plaintiff alleges among other things, that the defendant, her employer, breached an employment agreement which had been hammered out to control the conduct of the parties in exactly the situation presented here. The contract provides that faculty and administrators are insulated from searches of their desks, personal items or vehicles by school personnel except with the prior consent of the employee, which consent shall not be withheld where there is reasonable suspicion to believe that the employee has violated a policy, regulation or criminal law. It is not disputed that the employment contract has no application in criminal proceedings which may result in a termination of employment in the event of a conviction. In pertinent parts the Board’s “Drug-Free Workplace Policies and Procedures” provide:
XI. All Current Employees
A. Reasonable Suspicion (For Cause)
1. Circumstances Giving Rise to Suspicion
The School System requires all current employees to submit to alcohol and drug tests whenever supervisor observations or other objective circumstances reasonably support a suspicion that an employee may have alcohol and/or drugs present in his or her system or has otherwise violated the Board drugs and alcohol policy....
XVII. Investigations and Searches
All search requests must be approved by the Executive Director of Human Resources or designee.
Where a supervisor has reasonable suspicion that an employee has violated this policy, the Administration may search and inspect.... The Administration will search an employee’s personal vehicles ... only with the employee’s consent. However, any employee refusing to cooperate will be subject to being reported to law enforcement officials, detention of his/ her property and/or person pending the issuance of a search warrant upon probable cause, as well as discipline, up to and including discharge.
*1335 School officials concede that the basis for their employment action was the seizure of the suspect cigarette fragments from the interior of the plaintiffs vehicle. Prior to the nonconsensual entry into the automobile, they admit, there was insufficient grounds to require submission to a drug test. Linda Herman, the plaintiffs principal, testified at the administrative hearing that:
A. I think ... it is fair ... to ask somebody ... [to take a drug test]
[I]f we find drugs in their cars ...
Q. And the reason you thought that was reasonable was that, however it got there, something had been found in her car.
A. Right.
A. Kit’s fair to ask someone to have a drug test if you find something in their car ...
Q. Was the only reason that you think it might have been a reasonable suspicion, that something was found in her car?
A. That’s correct.
Board Superintendent Patrick Russo also testified that the reasonable suspicion relied on, as a basis for requiring the drug test, derived from the discovery of marijuana in the plaintiffs automobile. He admitted that the Board had violated its own policy but defended the action on grounds that “the integrity of the policy, from my perspective, outweighed the violation of the procedure.... ” In other words, he is saying, the teacher’s contractual right to privacy in her personal belongings is unenforceable because the Board’s search, even though in violation of the contract, gave rise to suspicion that she violated its anti-drug policy.
Abandoning its earlier position, the Board does not argue here that the contract permits it to search without consent where the Administration has a suspicion that an employee has violated its drug policy. Indeed it is clear in the procedures that a non-consensual search of an employee’s personal vehicle by Administration, even with reasonable suspicion, is prohibited. The new theories advanced by the Board, in defense to this federal lawsuit, are that the finding of reasonable suspicion is untainted because the dog’s alert outside the vehicle, without the search, was sufficient to justify the administrative action, or no warrant was needed for an intrusive search because a local law enforcement officer was present. Neither theory was advanced by the Board during administrative proceedings and cannot be reconciled with the facts. Mrs. Hearn’s injury resulted from an administrative action, which was governed by Board policy, unrelated to anything that could have been done in a criminal action. The local police officer did no more than bring a drug detection dog to the campus. He was then directed by the school board officer.
I would note further that the parties do not disagree that as a basic principle of any agreement .a breach by one party relieves the other party of its obligation to perform. Bradley v. Health Coalition, Inc., 687 So.2d 329, 333 (Fla. 3d DCA 1997). That principle should control the outcome.
Mrs. Hearn, a teacher of constitutional law, knew of her rights under the agreement, and was understandably aggrieved by the unlawful conduct of her employer. She acted properly and reasonably in refusing to consent to a urinalysis until she could reach her attorney.[1] Even though it *1336 breached its obligation under the agreement the employer was not without a remedy. Having forfeited its administrative remedy by the wrongful search, it could have pursued a criminal investigation.
Legally, the plaintiffs position is unassailable. But there are relevant factors beyond principles of contract law which have chilling ramifications. The plaintiff had been very critical of the School Board’s policy of campus lock down searches for drugs which she likened to police state tactics. Because of her classroom criticism of the practice as unconstitutional, she was not in favor with the employer. Expectations of privacy guaranteed by the policy were ignored and the penalty imposed was the professional equivalent of the death penalty. The twenty-seven (27) year stellar career of a 1994 “Teacher of the Year” is shattered with only three (3) years remaining to retirement with benefits.
By the holding here the majority has-recognized, implicitly, an illegal drugs exception to the law that the court will not rewrite private contracts between parties who are on equal footing. Complete Interiors, Inc. v. Behan, 558 So.2d 48, 52 (Fla. 5th DCA 1990). It is widely recognized that in the nation’s zealous war on drugs, rights secured by the Fourth Amendment have shrunk. See Robert W. Sweet, U.S. District Judge, The War on Drugs is Lost, National Review, Feb. 1996, at 44 (“The rights of the individual have been curtailed in the name of the War on Drugs.”). This may be the first case to hold that courts will not enforce private contract rights between an employer and employee, hammered out after negotiations to govern conduct of the parties in areas of privacy, where the employer has a suspicion, no matter how insubstantial, that the employee violated a drug policy. Not only is an outstanding high school teacher a casualty in this episode; so, incidentally, are basic contract principles.
Unquestionably the plaintiffs termination from employment as a teacher for not submitting to a drug test was an “intra school event”. On the collateral point, whether the search for and seizure of contraband from the interior of the plaintiffs vehicle by a school board officer was a “law enforcement event”, presents at least an issue of fact.
In my view this fact-driven case should go to a jury.

. After reaching her attorney several hours later Mrs. Hearn submitted to a urinalysis for controlled substances which was performed by a reputable laboratory. The results were negative. It is generally accepted scientific knowledge that active ingredients in marijuana, tetrahydrocannabinols (THC), are not flushed from the body in hours. THC is stored in fatty tissue and can be detected by conventional laboratory testing for up to 30 days after ingestion for a casual user and can be found in the body of chronic users up to a year after last consumed. Testimony of Dr. Donald Roach, Analytical Biochemist, in United States v. Joseph, No. 99 Cr. 6005 (S.D.Fla. Sept. 3, 1999).
*1336 No argument can be made that the delay in submitting to the test was intended to conceal the use of drugs or that the school board was hindered in its investigation. Clearly this case is not about drug possession or use by a high school teacher. Mrs. Hearn was fired because she challenged an unlawful school board action and delayed submission to a drug lest while seeking the advice of counsel.