[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13991

Non-Argument Calendar

_____

GARY HENDERSHOTT,

Plaintiff-Counter Defendant-Appellant,

*versus*

JOEL OSTUW,

Defendant-Counter Claimant-Appellee,

ECHOTA FABRICS, INC.,

Defendant.

2                    Opinion of the Court                    20-13991

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80006-RLR

_____

_____

No. 21-10358

Non-Argument Calendar

_____

GARY HENDERSHOTT,

                              Plaintiff-Counter Defendant-Appellant,

*versus*

JOEL OSTUW,

                              Defendant-Counter Claimant-Appellee,

ECHOTA FABRICS, INC.,

                              Defendant.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80006-RLR

———————————

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Gary Hendershott, *pro se*, appeals the district court's orders granting Joel Ostuw's motion for judgment on the pleadings on Hendershott's third amended complaint, Echota Fabric's motion to dismiss the third amended complaint, and Ostuw's motions for summary judgment on Hendershott's counterclaim and amended counterclaim. Hendershott asserts five main arguments on appeal: First, he argues that the district court erred by granting Ostuw's motion for judgment on the pleadings. Second, he argues that the district court erred by granting Echota's motion to dismiss with prejudice and abused its discretion by denying him leave to file a fourth amended complaint. Third, he argues that the district court erred by granting summary judgment in part in favor of Ostuw on his breach-of-contract counterclaim. Fourth, he argues that the district court abused its discretion by treating Ostuw's second amended counterclaim as a technical amendment and *sua sponte* terminating the motion for summary judgment based on that amendment. Finally, he argues that the district court erred by ordering specific performance of the settlement agreement because

it violated his First Amendment rights.  After careful review, we affirm.

## I

This case arises from a business relationship and series of disputes between Gary Hendershott, a dealer of art and historic artifacts, and Joel Ostuw, a man whom Hendershott assisted in selling various items.  The relationship soured in late 2017, and on January 8, 2018, Ostuw made a report to Georgia police after Hendershott failed to return his property.  These events led to Hendershott's first lawsuit against Ostuw, *Hendershott v. Ostuw*, 9:18-cv-80104 (S.D. Fla.), which alleged that Ostuw had wrongfully terminated a consignment agreement for the sale of Ostuw's collection of Civil-War-era swords and then reported to law enforcement that Hendershott stole the swords.  That lawsuit ended in a settlement agreement that the parties signed on September 18, 2018.  This appeal arises out of Hendershott's second lawsuit against Ostuw, which alleged that Ostuw breached the settlement agreement by reporting to the police that Hendershott stole items covered by the settlement agreement.

## II

### A

Hendershott's first argument on appeal is that the district court erred by granting Ostuw's motion for judgment on the pleadings with respect to Hendershott's third amended complaint.  The district court rejected Hendershott's claim in Count I of his

complaint that Ostuw breached the mutual-release provision of the parties' prior settlement agreement by reporting to the police that Hendershott had stolen certain items from him. The court rejected Count VIII for breach of the implied covenant of good faith and fair dealing because such a claim can't be maintained under Florida law unless there's a breach of an express term of a contract. We conclude that the district court didn't err because Hendershott didn't plausibly allege a breach of the settlement agreement, and Hendershott's breach-of-good-faith-and-fair-dealing claim fails without a valid breach-of-contract claim.[1]

Hendershott's breach-of-contract claim fails because he didn't plausibly allege[2] any conduct that Ostuw undertook that could have violated the terms of the settlement agreement.

---

[1] This Court reviews de novo a district court's grant of a motion for judgment on the pleadings. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

While Hendershott also asserts that the district court erred with respect to Count II of his third amended complaint, he has failed to contest one of the district court's independent grounds for its decision on that claim—namely, that default judgment should be entered against Hendershott because he failed to present an opposing memorandum of law and instead expressed his desire to voluntarily dismiss this count. *See* Doc. 125 at 9–10; *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

[2] A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Carbone*

6                    Opinion of the Court                    20-13991

To begin, Hendershott didn't plausibly allege that Ostuw's conduct occurred after the settlement agreement was executed on September 18, 2018. *See* Doc. 125 at 2. While Hendershott's complaint makes the bare allegation that Ostuw reported his property stolen "in May 2019," Doc. 60 at 5, the exhibit that Hendershott cites for that proposition—a prosecutor's affidavit in support of an arrest warrant that Hendershott attached to his complaint as Exhibit F—is dated February 5, 2018, *Id.* at 48. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511–12 (11th Cir. 2019) (noting that because "the plaintiff is the master of the complaint," we will consider "all documents that are attached to the complaint or incorporated into it by reference" (cleaned up)). Hendershott's Exhibit H is a property receipt dated February 23, 2018 that the police created when they recovered the property that Ostuw alleged Hendershott stole. Doc. 60 at 55–56. Hendershott's Exhibit C is the amended complaint from his first lawsuit against Ostuw, which was filed on August 24, 2018 and alleges that Ostuw had "Plaintiff arrested for theft." *Id.* at 36, 38. Thus, Hendershott's own complaint and exhibits make clear that Ostuw's challenged police report most likely was made *prior to* the signing of the settlement agreement: The plausibility of Hendershott's allegation that Ostuw made his police

---

*v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). The complaint must state a claim to relief that is plausible on its face to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

report in May 2019 is belied by Hendershott's own exhibits.[3] Ostuw couldn't have breached the agreement before the agreement existed.

Moreover, nothing in the settlement agreement prohibited Ostuw from cooperating with police or prosecutors.  That agreement provided that each party would dismiss his pending civil lawsuit against the other, and contained a mutual-release provision. Doc. 11-1 at 2.  But a release provision—which typically functions as an affirmative defense to future, civil breach-of-contract claims that a party might bring, see *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017); *Pontier v. Wolfson*, 637 So. 2d 39, 40 (Fla. Dist. Ct. App. 1994) (per curiam)[4]—doesn't impose obligations on parties with respect to criminal prosecutions controlled by state prosecutors.  See *State v. Brosky*, 79 So. 3d 134, 135 (Fla. Dist. Ct. App. 2012) (noting that under Florida law, the decision whether to prosecute or dismiss charges "is a determination to be made by solely the State").  Even if Ostuw continued to cooperate with the State of Florida's criminal prosecution after the settlement agreement was signed, doing so wouldn't have breached the agreement.

---

[3] Hendershott's exhibits demonstrate that he was *indicted* in May 2019— which, of course, doesn't mean that Ostuw made a police report in May 2019. *See* Doc. 60 at 50.  The district court subsequently found that the only criminal report that Ostuw made to the police was on January 8, 2018—nine months before he signed the settlement agreement.  Doc. 126 at 5.

[4] The parties don't dispute that Florida law governs the settlement agreement.

Our conclusion with respect to Hendershott's breach-of-contract claim in Count I dictates our conclusion with respect to Count VIII:  Under Florida law, the implied covenant of good faith and fair dealing is not an independent cause of action and can't be maintained absent the breach of an express contract term.  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151–52 (11th Cir. 2005).  Because the district court didn't err when it dismissed Hendershott's breach-of-contract claim, it also didn't err when it dismissed his good-faith-and-fair-dealing claim.

## B

Second, Hendershott argues that the district court erred by granting Echota's motion to dismiss with prejudice and that the court abused its discretion by denying him leave to file a fourth amended complaint.  He asserts that the court should have found that Echota was the alter ego of Ostuw and that all allegations against one were effective against the other.  He also asserts that it wouldn't have been futile for the court to allow him to file a fourth amended complaint and that the appellees wouldn't have been prejudiced by it.[5]

To begin, Hendershott has abandoned any challenge to the district court's order granting Echota's motion to dismiss by failing to address each independent ground upon which that order was

---

[5] We review for abuse of discretion a district court's decision on whether to grant leave to amend.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006).

based.  *See Sapuppo*, 739 F.3d at 680.  The district court granted Echota's motion to dismiss on three grounds: "[1] for failure to provide Echota with proper notice of the claims against it, [2] by default for failure to address . . . the arguments raised in the motion, and [3] by default for the lack of a legal basis to refute Echota's arguments.  Doc. 125 at 11.  But on appeal, Hendershott argues only that Echota is the alter ego of Ostuw.  Because Hendershott failed to challenge each independent ground of the court's decision, he "is deemed to have abandoned any challenge" to the unaddressed grounds, and "the judgment is due to be affirmed."  *Sapuppo*, 739 F.3d at 680.

With respect to the district court's denial of leave to file a fourth amended complaint, the court didn't abuse its discretion because Hendershott had "repeatedly failed to cure deficiencies in his pleadings."  Doc. 125 at 12.  After a court gives the plaintiff fair notice of the specific defects in his complaint and a meaningful chance to fix them—as the district court did here, *see, e.g.*, Doc. 49 at 5, Docs. 53, 60, Dkt. Entry 50—dismissal with prejudice is proper if the plaintiff files an amended complaint with the same defects, *see Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358–59 (11th Cir. 2018).  Moreover, granting Hendershott further leave to amend would have been futile because he had no plausible breach-of-contract claim against Echota:  As explained above, Hendershott had no plausible breach-of-contract claim resulting from Ostuw's filing of a police report, and hence, no plausible breach-of-contract claim against Echota based on that conduct.

## C

Third, Hendershott argues that the district court erred by granting partial summary judgment to Ostuw on his breach-of-contract counterclaim.  The district court found that Hendershott had breached the settlement agreement because it was undisputed that Hendershott had placed references to Ostuw on his website in violation of the agreement's terms.  Doc. 126 at 5.  After allowing Ostuw to seek specific performance as a remedy in an amended complaint and motion for summary judgment, the court granted that remedy.  Doc. 180 at 4.  Hendershott continues not to dispute that he breached the contract, *see* Br. of Appellant at 27, but argues that the court erred because it didn't accept his affirmative defense that Ostuw breached the contract first by pursuing the criminal case against him.  We disagree.[6]

Under Florida law, a material breach of an agreement generally "allows the non-breaching party to treat the breach as a discharge of his contract liability." *Bradley v. Health Coal., Inc.*, 687 So. 2d 329, 333 (Fla. Dist. Ct. App. 1997) (quotation omitted).  But as explained above, Ostuw didn't breach the settlement agreement because he filed his only police report nine months before the agreement was signed—a fact that the district court explicitly found at summary judgment. *See* Doc. 126 at 5.  And even if Ostuw continued to cooperate with the criminal investigation after the

---

[6] We review de novo a district court's grant of summary judgment. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).

agreement was signed, doing so wouldn't have violated any of the agreement's terms.  Because Ostuw didn't breach the contract first and it's undisputed that Hendershott breached by placing references to Ostuw on his website, the district court properly granted Ostuw summary judgment with respect to this counterclaim.[7]

## D

Fourth, construing his brief liberally, Hendershott seems to argue that the district court abused its discretion by terminating Ostuw's motion for summary judgment on his second amended counterclaim and instead ruling on Ostuw's motion for summary judgment on his first amended counterclaim.  *See* Dkt. Entry 179, Doc. 180.  The court treated Ostuw's second amended counterclaim "as filed November 18, 2020, nunc pro tunc"—effectively substituting the second amended counterclaim for the first—because it was "merely an amendment to clarify citizenship" for jurisdictional purposes.  Dkt. Entry 179.  Hendershott suggests that

---

[7] Hendershott also seems to argue that the district court erred in granting summary judgment to Ostuw based on its finding that Hendershott failed to properly dispute Ostuw's statement of material facts.  But even if Hendershott's various filings could be construed as responsive to Ostuw's statement, *see* Doc. 180 at 5 (citing Docs. 159, 161), none of these filings dispute that Hendershott placed references to Ostuw on his website in violation of the settlement agreement or establish that Ostuw violated the settlement agreement first.

Moreover, we decline to consider Hendershott's challenge to the settlement agreement as void because he raised it for the first time in his reply brief.  *See* Reply Br. of Appellant at 17; *Sapuppo*, 739 F.3d at 683.

this deprived him "of his opportunity to respond and correct errors in his prior Summary Judgment response." Again, we disagree.[8]

The district court didn't abuse its discretion by treating Ostuw's second amended counterclaim as a technical amendment or by *sua sponte* terminating Ostuw's subsequent motion for summary judgment based on that amendment because the amendment simply addressed a jurisdictional issue. The only difference between the second amended counterclaim and the first amended counterclaim is that the second clarifies that Ostuw is a citizen of Georgia and Hendershott is a citizen of Florida. *See* Doc. 171 at 2. Hendershott wasn't harmed by the district court's termination of Ostuw's motion for summary judgment on the second amended counterclaim and its effective substitution of the second amended counterclaim for the first because Hendershott already had ample opportunity to respond to the substance of Ostuw's counterclaim: He had already filed three responses to Ostuw's motion for summary judgment on the amended counterclaim. *See* Docs. 159, 161, 165. Because Hendershott hasn't shown that the district court applied the wrong legal standard, followed improper procedures, or made a clearly erroneous finding of fact, we conclude that the court didn't abuse its discretion. *See United States v. Rigel Ships Agencies, Inc.*, 432 F.3d 1282, 1291 (11th Cir. 2005) (per curiam).

---

[8] We review the decisions that a district court makes while managing its docket for abuse of discretion. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1320 (11th Cir. 2013).

## E

Finally, Hendershott argues that the district court erred in ordering specific performance of the settlement agreement's clause barring him from referring to Ostuw on his website because doing so violated his First Amendment speech rights.  But the court's enforcement of the parties' settlement agreement didn't constitute governmental action, so Ostuw's First Amendment rights weren't violated.[9]

"That Congress shall make no law . . . abridging the freedom of speech . . . is a restraint on government action, not that of private persons." *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973) (quotation marks omitted).  There can be no First Amendment violation absent governmental action. *United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 942 (11th Cir. 1995).  "[I]f, for constitutional purposes, every private right were transformed into governmental action by the mere fact of court enforcement of it, the distinction between private and governmental action would be obliterated." *Id.* at 943 (quotation marks omitted).

It's true that court enforcement of an agreement between private parties can sometimes be considered governmental action, such as when a state court enforces a racially restrictive covenant.

---

[9] We review de novo whether enforcing a settlement agreement violates the First Amendment. *United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 942 (11th Cir. 1995).

*See id.* (citing *Shelley v. Kraemer*, 334 U.S. 1 (1948)).  But given the desirability of allowing parties to use settlement agreements to end controversies, we have held that "where a court acts to enforce the right of a private party which is permitted but not compelled by law, there is no state action for constitutional purposes in the absence of a finding that constitutionally impermissible discrimination is involved." *Id.*  In the absence of such discrimination, enforcing a settlement agreement between "parties in positions of equal bargaining power . . . to restrict, in a limited degree, their First Amendment rights on commercial speech" doesn't constitute governmental action.  *Id.*

Here, the district court didn't err by ordering specific performance of the settlement agreement because Hendershott hasn't shown that the agreement involved constitutionally impermissible racial discrimination such that its enforcement would constitute governmental action for First Amendment purposes.  Moreover, Hendershott's argument that the parties had unequal bargaining power because he didn't have time to review the agreement and didn't have an attorney is meritless because the settlement agreement that he attached to his third amended complaint stated that the parties carefully reviewed it, and it is signed by both Hendershott and his attorney.[10]  *See* Doc. 60 at 40–43.  Therefore, the

---

[10] We decline to consider Hendershott's argument that he was under duress when he entered the settlement agreement because he abandoned it by raising it for the first time in his reply brief. *See* Reply Br. of Appellant at 22–24; *Sapuppo*, 739 F.3d at 683.

district court's enforcement of Hendershott and Ostuw's settlement agreement through the remedy of specific performance didn't constitute governmental action that could implicate Hendershott's First Amendment rights.

**AFFIRMED.**